[Civ. No. 19319.   First Dist., Div. One.   Mar. 27, 1961.]

J. J. HEGARTY et al., Respondents, v. HUBERT J. SOHER et al., as Municipal Civil Service Commissioners, etc., Appellants.

Dion R. Holm, City Attorney (San Francisco), and Bernard J. Ward, Deputy City Attorney, for Appellants.

Sylvester J. McAtee as Amicus Curiae on behalf of Appellants.

Lewis & Stein for Respondents.

WOOD (Fred B.), J. pro tem.*—Plaintiffs, a policeman and a fireman, brought this proceeding to require the Civil Service Commission of San Francisco to certify to the board of supervisors certain longevity pay provisions of the city of Los Angeles, pursuant to sections 35.5.1 and 36.2 of the San Francisco Charter.[1] Judgment was rendered for plaintiffs, granting declaratory relief and directing the issuance of a writ of mandate. Our examination of the record convinces us that the Los Angeles longevity pay rates are not of the type which section 35.5.1 or 36.2 requires the commission to certify and that the judgment should be reversed.

For a number of years, until the enactment of section 35.5.1 in 1952, the salaries for the various classes of positions in the police department were fixed by section 35.5 of the charter. When section 35.5.1 took effect, section 35.5 fixed the annual compensation of "police officers, police patrol drivers and women protective officers" at $3,480 for the first year of service, $3,660 for the second year, $3,900 for the third year, and "for the fourth year of service and thereafter $4,080." For other members of the department, section 35.5 fixed salaries without gradation according to years of service; e.g., $10,980 for the chief of police, $4,440 for photographers. (Stats. 1951, ch. 14 of Res., pp. 4227, 4229.)

Section 35.5.1 changed this by giving the board of supervisors the power and the duty of fixing these salaries each year by ordinance, subject to certain limitations. (Ch. 5 of Res., 2d Ex. Sess. of 1952; printed in the Stats. of 1953, p. 527, § 35.5.1 at p. 529.) It requires the civil service commission, not later than February 15 each year, to "survey and certify to the board of supervisors *rates of compensation* paid *police officers or patrolmen* employed in the respective police departments in all cities of 100,000 population or over" in this state. (Emphasis added.)

It is the duty of the board of supervisors, not later than April 1 of each year, "to fix *rates of compensation* for the members of the police department whose annual compensations are set forth in section 35.5 of this charter and said rates shall be in lieu of said annual compensations and shall be effective on the 1st day of July next following." (Emphasis added.) This it does by first fixing the rate "for the fourth

*Assigned by Chairman of Judicial Council.

[1] These sections are substantially identical except that 35.5.1 relates to policemen and 36.2 to firemen. For convenience, we will analyze but one of them, section 35.5.1.

year of service and thereafter" for "police officers, police patrol drivers and women protective officers" which "shall not exceed the highest *rate of compensation* paid police officers or patrolmen in regular service in the cities included in the certified report of the civil service commission." (Par. (a) of § 35.5.1; emphasis added.)

The rate thus fixed for this group of officers ("police officers, police patrol drivers and women protective officers" in the fourth year of service) and the old rates set forth in section 35.5 of the charter furnish the basis for the "rates of compensation" for other members of the police department:

"(b) for the first, second and third year of service for police officers, police patrol drivers and women protective officers [the rates of compensation] shall include the same amount of adjustment as that used in fixing the rates of compensation for the fourth year of service for the same class;

"(c) for said members of the police department other than police officers, police patrol drivers and women protective officers [the rates of compensation] shall include the same percent of adjustment as that established by said ordinance for police officers in fourth year of service. . . ."

The crucial question in this case is whether or not the Los Angeles longevity pay rates are "rates of compensation" as defined in section 35.5.1: "The expression 'rates of compensation,' as used in this section in relation to said survey, is hereby declared to apply only to a basic amount of wages, with included range scales, and does not include such working benefits as might be set up by any other city by way of holidays, vacations, other permitted absences of any type whatsoever, overtime, night or split shift, or pay for specialized services within a classification or rank, or other premium pay differentials of any type whatsoever. The foregoing enumeration is not exclusive, but it is the intent of this section that nothing other than a basic amount of wages, with included range scales, is to be included within the meaning of 'rates of compensation.' Working benefits and premium pay differentials of any type shall be allowed or paid to members of the police department referred to herein only as is otherwise provided in this charter."

The Los Angeles Salary Standardization Ordinance for Firemen and Policemen (Ord. No. 89935) has two sections that require consideration. Section 14, as amended by Ordinance Number 110679, sets forth the salary rates for each class of positions, in five steps, one for each of the first five

years of service except that in the case of fireman, policeman or policewoman, a person starts at the second step "and advancements in salary shall be made *automatically* step by step after each year of aggregate active service in the class and in the department in which the member is employed, from the second step to the maximum step rate within the salary schedule prescribed for the class." (Subd. (d) of § 14; emphasis added.)[2] Each of these, obviously, is a "basic amount of wages" and therefore a "rate of compensation" as defined in section 35.5.1. There is no dispute as to this. The parties are agreed.

The other section of the Los Angeles Salary Standardization Ordinance with which we are concerned is section 14.3, added by ordinance 108494 and amended by ordinance 109436. It provides for an amount equal to "one-half step *above* the rate corresponding to the rate fixed in this ordinance as *the maximum rate for his class*. The amount thus computed shall be $14.50 per month for all members upon completion of ten and until the completion of 15 years of aggregate service." (Emphasis added.) In similar terms it provides for a one-step increase ($29 per month) upon completion of 15 and until completion of 20 years of service; and one and one-half steps increase ($44 per month) after completion of 20 years of service.

These longevity increases are not automatic. Eligibility to receive them is dependent upon *certification by the chief administrative officer* of the police or fire department that the member "has completed the prescribed number of aggregate years of service in his class and *that such member's standard of service is satisfactory . . .*"; also, they are referred to as "*compensation in addition to the regular salary* prescribed for his class." (Emphasis added.)

In addition, section 14.3 declares: "It is the *intent of the Council* in enacting this section *that the longevity pay* herein provided for shall *be* construed and *deemed* to be *a privilege earned by merit and not a right, and if* at any time any member's *service is unsatisfactory,* the Chief Administrative Officer of the Fire Department or the Police Department shall so certify to the Controller and upon such certification the *pay-*

---

[2]Our attention has been directed also to subd. (h) of section 14, which declares that "receipt of salary at the maximum or fifth step rate is a *privilege* to be earned . . . *and not a right.*" (Emphasis added.)

This is not significant here. Subd. (d) of section 14 expressly declares that subd. (h) does not apply to the classes of fireman, policeman or policewoman.

*ment of longevity pay* for such member *shall* thereupon *cease until* such time as the Chief Administrative Officer of his department again certifies that *such member has achieved a satisfactory standard of service.''* (Emphasis added.)

Where, as here, longevity pay is not automatic (accruing by the mere lapse of time) but is contingent upon certification that one's standard of service is satisfactory, and is described as being a half-step, a step, or a step and one-half above the maximum rate fixed for one's class and in addition to the regular salary prescribed for one's class, coupled with an express declaration of legislative intent that this type of pay is a privilege earned by merit and not a right, the conclusion is impelled that it is not a ''basic amount of wages'' as that term is used in the governing definition of ''rates of compensation'' expressed in section 35.5.1 of the San Francisco Charter. It is in the nature of a ''premium pay differential.'' Although it is not expressly named among the ''working benefits'' and ''premium pay differentials'' listed in the section 35.5.1 definition of ''rates of compensation'' (''holidays, vacations, other permitted absenses . . . overtime, night or split shift . . . pay for specialized services *. . . or other premium pay differentials of any type whatsoever''* [emphasis added]), that ''enumeration is not exclusive''; it is illustrative, not limiting, a partial list of samples of nonbasic pay rates.

We conclude that the Los Angeles longevity pay rates are not within the purview of section 35.5.1 of the San Francisco Charter, are not ''rates of compensation'' which that section directs the Civil Service Commission to ''survey and certify to the board of supervisors.''

The same analysis obtains and the same conclusion follows in relation to section 36.2 of the San Francisco Charter (Ch. 5 of Res., 2d Ex. Sess. of 1952; printed in Stats. 1953, pp. 527, 532.) It gives the board of supervisors power to fix salaries in the fire department in lieu of the salaries formerly specified in section 36 of the charter (Stats. 1951, ch. 14 of Res., pp. 4222, 4230.)

The judgment is reversed.

Bray, P. J., and Tobriner, J., concurred.